UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERADATA CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP SE, et al.,<br><br>Defendants. | Case No. 18-cv-03670-WHO<br><br>**ORDER GRANTING RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER**<br><br>Re: Dkt. No. 102 |

SAP seeks relief from the Hon. Elizabeth Laporte's ruling on related discovery disputes. *See* Disputes at Dkt. Nos. 91, 93; Order at Dkt. No. 102. The key undisputed facts underlying that Order (and the Disputes) are that: (1) on September 4, 2015, the German newspaper *Der Spiegel* published an article reporting that one of SAP's internal auditors, later identified as Dr. Thomas Waldbaum, concluded that SAP misappropriated proprietary and confidential information from Teradata that SAP's engineers obtained during a joint venture (Second Amended Complaint ¶ 50); and (2) in early 2019 disclosures made by Teradata confirmed that Teradata had possession of copies of SAP's audit-related documents in its possession and that Teradata received those documents from a source at *Der Spiegel*.

In the Disputes raised before Judge Laporte, SAP claimed that the audit-related documents in Teradata's possession are covered by the attorney-client privilege, and sought an order requiring their return to SAP. Dkt. No. 93. Teradata opposed, arguing that the documents at issue were not privileged (under either German or U.S. law), and even if privileged, the privilege was either waived or subject to the crime-fraud exception. As such, Teradata also sought an order requiring

SAP to produce additional documents related to the audit. Dkt. No. 91.

Judge Laporte resolved the Disputes by finding that SAP had waived any potentially applicable privilege by failing to take reasonable steps to investigate what documents *Der Spiegel* had and to recover the documents from *Der Spiegel*. Dkt. No. 102. Reaching an issue not briefed by the parties, Judge Laporte also concluded that SAP's waiver effectuated a broad subject-matter waiver so that SAP was required to produce additional audit-related documents in its possession. *Id*.

In finding waiver, the only case Judge Laporte relied on was *United States v. de la Jara*, 973 F.2d 746 (9th Cir. 1992). There, the Ninth Circuit held that a criminal defendant whose attorney-client privileged information was seized by law enforcement executing search warrants failed "to pursue all reasonable means of preserving the confidentiality of the privileged matter," for example by filing a motion to suppress or a motion to return evidence, "during the six month interlude between its seizure and introduction into evidence." *Id*. at 750. In those circumstances, the district court did not abuse its discretion in concluding that the privilege had been waived by the defendant's inaction.[1]

However, *de la Jara*'s rationale and import has been limited by courts, including at least one district court in the Ninth Circuit, to situations where the involuntary disclosure is made in connection with an investigation or other legal proceeding as in *de la Jara*. *See, e.g., S.E.C. v. Lavin*, 111 F.3d 921, 931 (D.C. Cir. 1997) (recognizing that "[r]ules of privilege are designed to afford its holder the right to protect himself or herself against the use of privileged materials in legal proceedings"); *see also Fodor v. Blakey*, CV1108496MMMRZX, 2012 WL 12893986, at *8 (C.D. Cal. Dec. 31, 2012) (noting the *de la Jara* "court did not find that failing to object to the disclosure of a marital communication *in a non-courtroom setting* waives the privilege" and refusing to find waiver where nothing in the record suggested that defendant knew "litigation was

---

[1] The Order at issue also cited to *ADR Tr. Corp. v. Dean*, 813 F. Supp. 1426 (D. Ariz. 1993). There, an unexplained disclosure of a privileged memo to *The Washington Post* did not waive the holder's privilege when the holder demonstrated that it took "precautions to secure" the memo's confidentiality prior to disclosure and that, despite an investigation, the source of the leak was unidentified and, therefore, no "inference" that its disclosure had been made by someone with authority to waive the privilege could be made. *Id*. at 1429-30.

2

imminent" from party to whom privileged disclosures had been make "or that he needed to take steps to protect the communications with his ex-wife from further disclosure") (emphasis in original).

The application of *de la Jara* within the Ninth Circuit has typically been confined to analyses of whether a privilege holder undertook reasonable efforts to protect the privilege or limit use of privileged information following either the seizure of information by the government or inadvertent disclosure within a legal proceeding. *See, e.g.*, *U.S. v. W. Titanium, Inc*., 08-CR-4229-JLS, 2010 WL 3789775, at *6 (S.D. Cal. Sept. 27, 2010) (applying *de la Jara's* reasonableness standard to assess whether "[d]efendants have made sufficient efforts reasonably designed to protect and preserve their privilege with respect to" documents seized by the government); *Hynix Semiconductor Inc. v. Rambus Inc*., CV-00-20905-RMW, 2008 WL 350641, at *2 (N.D. Cal. Feb. 2, 2008) (finding *de la Jara's* "reasonable efforts" standard satisfied where defendant "has strenuously objected every time it has been ordered to produce allegedly privileged documents" in litigation).

I conclude that the portion of the *de la Jara* analysis focusing on what steps the privilege holder takes after an involuntary disclosure does not apply in the context of involuntary disclosure to a media outlet. None of the cases addressing whether involuntary disclosure to a media outlet waives privilege consider whether the privilege holder pursued any action *against* the media outlet to seek the return or further limit the use of the privileged information. *See id*. at *4 (citing cases holding that involuntary disclosure of information subsequently published by newspapers did not waive privilege, as long as reasonable steps were taken to preserve information's confidentiality prior to the disclosure). But in addressing a very similar factual context, the Hon. Jacqueline Corley determined in *Dukes v. Wal–Mart Stores*, 01–cv–252 CRB(JSC), 2013 WL 1282892 (N.D. Cal. March 26, 2013), that the involuntary leak of an attorney-client memo to the *New York Times*, who subsequently published an article discussing the memo at length, did not waive the privilege to allow for use of the memo in litigation. A copy of the leaked memo was later sent by an unknown person to plaintiffs' counsel eight months after the publication of the article in the *New York Times*. Plaintiffs' counsel recognized that the memo was marked as privileged, sequestered

3

it and did not further review it, and promptly sought a ruling on waiver from the District Court. Judge Corley analyzed the evidence defendants submitted establishing the steps they took to maintain the memo's confidentiality *prior* to its leak, not whether they had done anything to retrieve the document from the *New York Times*. Judge Corley concluded that the memo's disclosure to the *Times* did not waive the privilege. *Id*. at * 5.

I agree with Judge Corley's reasoning and analysis. At least in this context, where the involuntary disclosure occurred to a media outlet, I hold that waiver must be analyzed considering the steps SAP holder took *prior* to the involuntary disclosure, not on the steps SAP took to seek return from, or limit the use of documents by *Der Spiegel* after that disclosure.[2]

Once a law enforcement investigation or civil litigation commences, however, the privilege holder is required to take reasonable steps to protect its privilege. *See de la Jara*, 973 F.2d at 749 n.2 (recognizing the government's argument that de la Jara "could have filed, for example, a motion to suppress the letter under Fed.R.Crim.P. 12(b)(3), or a motion for return of property under Fed.R.Crim.P. 41(e)" to protect his privilege). Any argument that SAP should have known that Teradata had access to unpublished, privileged information given Teradata's allegations in the Complaint and therefore that SAP should have moved with more speed to protect its privilege and prevent use of that information in this case is not foreclosed. That argument, if raised by the parties, should be resolved by Judge LaPorte in the first instance.

SAP's motion for relief from the nondispositive Order is GRANTED. The Disputes are returned to Judge Laporte for resolution of whether the steps SAP took with respect to the audit-related documents prior to the disclosure to *Der Spiegel* or the steps it took once it was on

---

[2] As the experts in German law presented by the parties to me (debating an issue that was not raised before Judge Laporte) demonstrate, whether a German entity had an effective or potentially effective recourse in 2015 to seek return or to limit use of documents involuntarily disclosed to a media outlet is questionable and, even if such recourse existed, depends on whether the documents disclosed matters of "public concern." *See* Dkt. Nos. 102-1, 108-1. This proves the *Levin's* court's concern and recognition of "[t]he inadvisability of adopting an affirmative duty" absent use or disclosure in judicial proceedings, "given the difficulties that arise in determining what would constitute sufficient preemptive measures, as well as the unfairness and wastefulness of requiring the privilege holder to take affirmative action likely to prove unnecessary or ineffective." *S.E.C. v. Lavin*, 111 F.3d at 931.

4

sufficient notice of the use of privileged information in this litigation were reasonable to maintain its assertion of privilege.[3]

**IT IS SO ORDERED.**

Dated: June 13, 2019

William H. Orrick
United States District Judge

---

[3] The parties dispute whether U.S. or German privilege law governs the documents and whether the audit-related documents were, in fact, privileged under the applicable law. This Order does not reach or touch upon the resolution of those questions. Nor does this Order reach or touch upon whether the crime-fraud or the at issue-waiver doctrines vitiate the assertion of privilege. If Judge Laporte determines that waiver does not apply, she may need to address these other issues at the heart of this dispute.

5