MARK L. WHITAKER (admitted *Pro Hac Vice*)
MWhitaker@mofo.com
DAVID D. CROSS (admitted *Pro Hac Vice*)
DCross@mofo.com
DANIEL P. MUINO (CA BAR NO. 209624)
DMuino@mofo.com
BRADLEY S. LUI (CA BAR NO. 143088)
BLui@mofo.com
MARY PRENDERGAST (CA BAR NO. 272737)
MPrendergast@mofo.com
FAHD H. PATEL (admitted *Pro Hac Vice*)
FPatel@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, District of Columbia 20037
Telephone:    (202) 887-1500
Facsimile:    (202) 887-0763

Attorneys for Plaintiffs
TERADATA CORPORATION,
TERADATA US, INC., and
TERADATA OPERATIONS, INC.

BRYAN WILSON (CA BAR NO. 138842)
BWilson@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone:    (650) 813-5600
Facsimile:    (650) 494-0792

WENDY RAY (CA BAR NO. 226269)
WRay@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

JACK W. LONDEN (CA BAR NO. 85776)
JLonden@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TERADATA US, INC., <br><br> Plaintiff, <br><br> and <br><br> TERADATA CORPORATION and TERADATA OPERATIONS, INC., <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> v. <br><br> SAP SE, <br><br> Defendant/Counterclaim-Plaintiff, <br><br> and <br><br> SAP AMERICA, INC. and SAP LABS, LLC, <br><br> Defendants. | Case No. 3:18-cv-03670-WHO (JCS) <br><br> **TERADATA'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF (1) INVALIDITY OF U.S. PATENT NO. 8,214,321 AND (2) LIMITATION ON DAMAGES DUE TO FAILURE TO MARK** <br><br> Judge:        William H. Orrick <br> Date:         October 13, 2021 <br> Time:         2:00 pm <br> Location:    Courtroom 2, 17th Floor or via Video Conference |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I. INTRODUCTION ........................................................................................ 1

II. LEGAL STANDARD FOR SUMMARY JUDGMENT ......................... 2

III. ARGUMENT ............................................................................................... 2

    A. The '321 Patent Is Directed to Patent-Ineligible Subject Matter .......... 2

        1. Overview of the '321 Patent ........................................................ 2

        2. Abstract Ideas are Not Eligible for Patent Protection .............. 6

        3. The '321 Patent Is Directed to an Abstract Idea ....................... 7

            a. Courts Have Found that Collecting, Organizing. and Presenting Information Is an Abstract Idea .................................... 7

            b. The Claims of the '321 Patent Involve Collecting, Organizing, and Presenting Information ........................................ 8

            c. The '321 Patent Does Not Improve Computer Technology ......... 10

        4. The '321 Patent Lacks an Inventive Concept ........................... 12

            a. The Claims Recite Well-Understood, Routine, Conventional Database Features .......................................... 13

            b. The Remaining, Functional Claim Limitations Are In The Realm Of Abstract Ideas .......................................... 14

    B. SAP Cannot Recover Damages for the '179 and '421 Patents Before May 21, 2019 ................................................... 17

IV. CONCLUSION ........................................................................................... 19

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*,
5
    694 F.3d 1312 (Fed. Cir. 2012) ................................................................................19

6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ...........................................................................6, 7, 8, 12
7

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
8
    6 F.3d 1523 (Fed. Cir. 1993) ..................................................................................19

9

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*,
10
    950 F.3d 860 (Fed. Cir.), *cert. dismissed*, 141 S. Ct. 753 (2020) ...........................19

11

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020) ......................6
12

*BSG Tech LLC v. Buyseasons, Inc.*,
13
    899 F.3d 1281 (Fed. Cir. 2018) ...........................................................................7, 14

14

*Contour IP Holding, LLC v. GoPro, Inc.*,
    No. 3:17-cv-04738-WHO, 2020 U.S. Dist. LEXIS 158184 (N.D. Cal. Aug. 31,
15
    2020) ........................................................................................................................17

16

*East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
    No. 12-cv-517, 2015 U.S. Dist. LEXIS 5536 (D.N.H. Jan. 15, 2015),
17
    *aff'd*, 645 Fed. App'x 992 (Fed. Cir. 2016) ............................................................9

18

*Elec. Power Grp. LLC v. Alston S.A.*,
19
    830 F.3d 1350 (Fed. Cir. 2016) ...............................................................7, 8, 10, 14

20

*Enfish, LLC v. Microsoft Corp.*,
21
    822 F.3d 1327 (Fed. Cir. 2016) ...........................................................................10, 12

22

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 46106
23
    (N.D. Cal. Apr. 8, 2015)..........................................................................................19

24

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
25
    850 F.3d 1332 (Fed. Cir. 2017) .........................................................................6, 8, 9

26

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ................................................................................8

27

*Intellectual Ventures I LLC v. Symantec Corp.*,
28
    838 F.3d 1307 (Fed. Cir. 2016) ...........................................................................7, 11

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .................................................................................7

*Mortgage Grader, Inc. v. First Choice Loan Services Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) .................................................................................2

*Smart Authentication IP LLC v. Elec. Arts, Inc.*,
  402 F. Supp. 3d 842 (N.D. Cal. 2019) .....................................................................12

*Synopsys, Inc. v. Avatar Integrated Sys.*,
  No. 20-cv-04151-WHO, 2020 U.S. Dist. LEXIS 212877
  (N.D. Cal. Nov. 12, 2020).......................................................................................11

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016)..................................................................................10

*Unwired Planet, LLC v. Apple Inc.*,
  No. 13-cv-04134-VC, 2017 U.S. Dist. LEXIS 20935 (N.D. Cal. Feb. 14, 2017) ...................19

*Voip-Pal.com, Inc. v. Apple, Inc.*,
  No. 12-CV-06216-LHK, 411 F. Supp. 3d 926 (N.D. Cal. 2019),
  *aff'd*, 828 Fed. Appx. 717 (Fed. Cir. 2020)..............................................................7

**Statutes and Other Authorities**

35 U.S.C.
  § 101............................................................................................................ *passim*
  § 287...............................................................................................1, 2, 18, 19

Fed. R. Civ. P.
  56....................................................................................................................2, 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN that on October 13, 2021, at 2:00 p.m., or as soon

thereafter as the matter may be heard, before the Honorable William H. Orrick, District Judge of

the United States Court for the Northern District of California, San Francisco Division, located at

450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs/Counterclaim-Defendants

Teradata Corporation and Teradata Operations, Inc. and Plaintiff Teradata US, Inc. (collectively,

"Teradata") will and hereby do move for summary judgment against Defendants/Counterclaim-

Plaintiff SAP SE's (collectively, "SAP") counterclaims asserting the infringement of U.S. Patent

Nos. 8,214,321 ("'321 patent"), 7,617,179 ("'179 patent"), and 9,626,421 ("'421 patent").

The claims of the '321 patent are directed to patent-ineligible subject matter under 35

U.S.C. § 101 and are therefore invalid.  Accordingly, SAP's counterclaims asserting that Teradata

infringes the claims of the '321 patent should be dismissed.  Additionally, SAP failed to give

notice to the public that certain SAP products practice the claims of the '179 and '421 patents by

marking those products with its patent numbers.  Thus, under 35 U.S.C. § 287, SAP is not entitled

to damages for alleged infringement of those patents before May 19, 2019, the date SAP first

informed Teradata of its infringement allegations.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Teradata moves for summary judgment against SAP's counterclaims alleging

infringement of the '321 patent (ECF No. 124-1) because the asserted claims are not directed to

patent-eligible subject matter under 35 U.S.C. § 101.  The '321 patent is directed to the

unpatentable, abstract idea of associating ("mapping") database tables and online analytical

processing [OLAP] cubes with respective classes for use with application programs.  This

"mapping" is simply a form of organizing information, a type of activity that courts have

repeatedly held to be abstract and ineligible for patent protection.  Moreover, the claims of the

'321 patent lack an inventive concept because they place no meaningful limitations on the

abstract idea.  Instead, the claims recite well-known elements such as database tables, OLAP

cubes, application software, and processing and analyzing data.  The recitation of conventional

1  computer software and generic, functional limitations cannot transform a patent-ineligible

2  abstract idea into a patent-eligible invention.

3      Teradata also moves for summary judgment against SAP's damages claims for the '179

4  and '421 patents (ECF Nos. 124-3 and 124, respectively) for periods before May 21, 2019.

5  SAP's disclosures and discovery responses establish that it sold products that practice the '179

6  and '421 patents but failed to mark its products with its patent numbers or otherwise give notice

7  to the public that its products were patented in accordance with 35 U.S.C. § 287.  Thus, even if

8  SAP could prove liability, SAP would not be entitled to damages for any infringement before

9  May 21, 2019, the date SAP gave notice to Teradata of its infringement allegations.

10  **II.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

11      Summary judgment is appropriate when "there is no genuine dispute as to any material

12  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he

13  'mere existence of some alleged factual dispute between the parties will not defeat an otherwise

14  properly supported motion for summary judgment.'"  *Mortgage Grader, Inc. v. First Choice Loan*

15  *Services Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

16  U.S. 242, 247-248 (1986)).  "Instead, summary judgment will not lie if the dispute about a

17  material fact is genuine, that is, if the evidence is such that a reasonable jury could return a

18  verdict for the nonmoving party."  *Id.* (internal quotation marks and citation omitted).

19  **III.    ARGUMENT**

20      **A.    The '321 Patent Is Directed to Patent-Ineligible Subject Matter**

21      The '321 patent improperly attempts to claim an abstract idea, and no "inventive concept"

22  transforms it into patent-eligible applications.  The claims are therefore invalid for lack of patent-

23  eligible subject matter.

24          **1.    Overview of the '321 Patent**

25      The '321 patent is entitled "Systems and Methods for Data Processing."  SAP's technical

26  expert describes the '321 patent as follows:

27          The '321 patent relates to ways to organize the tables and cubes
            used in databases so that they can be more easily and efficiently
28          recognized and accessed. At a high level this organization is

1          accomplished by assigning a table or cube to a particular class.
           These classes serve to group data structures storing related data, so
2          an application can access the structures together.

3     Rebuttal Expert Report of Dr. David Maier on the Validity of SAP SE's Patents, (Swoopes Decl.

4     Ex. A) ¶ 683.

5          The '321 patent states that it "relates to computer-implemented databases and data

6     processing systems and methods," including "data warehouse computer systems and online

7     analytical processing (OLAP)." '321 patent, 1:7−11.  The patent describes application programs

8     that process and analyze "classes" of "database tables" and "OLAP cubes." *Id.*, 3:25−27,

9     4:59−62.  This Court construed "online analytical processing cube" to mean "[a] data structure

10    designed to store multidimensional data, where data to be stored in the data structure is provided

11    by online analytical processing."  Claim Construction Order (July 15, 2020), ECF No. 279 at 23.

12         Figure 3, reproduced below, shows a representative embodiment of the disclosed data

13    warehouse system.  It depicts capabilities for "storage," containing database tables and OLAP

14    cubes, and "processing," containing mapping tables (324 and 334) for mapping database tables to

15    database table classes and for mapping OLAP cubes to OLAP cube classes.  The "processing"

16    area of Figure 3 also shows application programs 320 and an OLAP component 330.

17

18

19

20

21

22

23

24

25

26

27

28



**FIG. 3**

Figure 4 depicts a flowchart consistent with an embodiment of the alleged invention.



**FIG. 4**

In summary, data is imported into the data warehouse; an application is provided; database tables and OLAP cubes are classified (mapped) to classes; data in the tables and OLAP cubes are

1    processed; and the results are stored or shown to a user.  (*See* '321 patent, 6:1−28.)

2         SAP has asserted claims 1, 2, and 4.  ECF No. 461 at 1.  Claim 1 below is representative:

3         1. A data processing method comprising:

4         [1.a] providing a set of database tables in a data warehouse, each
          database table being assigned to an entity type and storing entities
5         of its entity type;

6         [1.b] providing a set of online analytical processing cubes in a data
          warehouse, each online analytical processing cube specifying a
7         layout for transactional data storage;

8         [1.c] providing at least one application program for processing at
          least one class of database tables and at least one class of online
9         analytical processing cubes;

10        [1.d] mapping a sub-set of the set of database tables to the at least
          one class of database tables, the sub-set of database tables
11        comprising database tables of one or more entity types;

12        [1.e] mapping a sub-set of the set of online analytical processing
          cubes to the at least one class of online analytical processing cubes;
13

14        [1.f] invoking an online analytical processing component to fill the
          online analytical processing cubes with transactional data;

15        [1.g] processing the entities stored in the sub-set of database tables
          and the transactional data stored in the sub-set of online analytical
16        processing cubes by the application program; and

17        [1.h] providing analysis of the entities and the transactional data
          processed by the application program to a user.
18

19   Claim 2 depends on claim 1, but it requires "a set of application programs" that is "adapted to

20   process a set of classes of database tables and [OLAP] cubes."  Independent claim 4 is a system

21   claim that corresponds to the limitations in claim 1.  Claim 4 requires "mapping table[s] for

22   mapping" tables to classes and OLAP cubes to classes.

23        The claims use broad, generic terminology for the key elements.  For example, they do not

24   require database tables with a particular structure or design.  Nor do the claims require specific

25   application software; during claim construction, the parties agreed that "application program" in

26   the '321 patent means "software for processing at least one class of database tables and at least

27   one class of [OLAP] cubes."  Joint Claim Construction and Prehearing Statement Pursuant to

28   Patent L.R. 4-3, ECF No. 206 at 2.  Nor do the claims recite specific algorithms for "mapping"

1    tables or OLAP cubes to classes, for processing data in tables or OLAP cubes, or for providing

2    analysis to a user. And, as explained below, each of these elements was known in the art at the

3    time of the filing of the application that issued as the '321 patent.

### 2. Abstract Ideas are Not Eligible for Patent Protection

5    Abstract ideas, without more, are not patentable under 35 U.S.C. § 101. *Alice Corp. Pty.*

6    *Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). The Supreme Court has articulated a two-

7    step test for identifying claims directed to patent-ineligible subject matter. *Id.* First, courts must

8    "determine whether the claims at issue are directed to a patent-ineligible concept" such as an

9    abstract idea, law of nature, or natural phenomenon. *Id.* at 218. Second, if so, courts must

10   "consider the elements of each claim both individually and as an ordered combination to

11   determine whether the additional elements transform the nature of the claim into a patent-eligible

12   application." *Id.* at 217 (internal quotation marks and citation omitted).

13   In *Alice*, the Supreme Court made clear that "the mere recitation of a generic computer

14   cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223.

15   "[I]f a patent's recitation of a computer amounts to a mere instruction to implement an abstract

16   idea on a computer, that addition cannot impart patent eligibility." *Id.* (internal citations and

17   quotation marks omitted). "Nor is limiting the use of an abstract idea 'to a particular

18   technological environment'" enough for patent eligibility. *Id.* (quoting *Bilski*, 561 U.S. at

19   610-11). This rule ensures that abstract ideas are not removed from the public sphere simply

20   because the idea has a "wholly generic computer implementation." *Id.*

21   Whether a patent meets the requirements of § 101 is a question of law. *Intellectual*

22   *Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). "Patent

23   eligibility has in many cases been resolved on motions to dismiss or summary judgment."

24   *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020).

25   While § 101 inquiries "may contain disputes over underlying facts, . . . not every § 101

26   determination contains genuine disputes over the underlying facts material to the § 101 inquiry."

27   *Id.* Thus, when patents are directed to an abstract concept and there are no genuine, underlying

28   factual disputes, district courts regularly grant summary judgment motions under § 101, and the

1    Federal Circuit affirms those decisions.  *See, e.g., BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d

2    1281 (Fed. Cir. 2018); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir.

3    2016).

4    **3.    The '321 Patent Is Directed to an Abstract Idea**

5    The '321 patent is directed to the unpatentable, abstract idea of associating ("mapping")

6    database tables and OLAP cubes with respective classes for use with application programs.

7    Although the claims also recite generic, conventional computer data structures (such as tables and

8    OLAP cubes), generic software application programs, and generic steps such as processing data

9    and providing analysis to a user, SAP did not purport to invent these elements, and they do not

10    add to patentability.  This is not a case in which an accused infringer seeks to oversimplify a

11    patent's claims in the search for an abstract idea.  SAP's own expert described the patent as

12    follows:

13
> The '321 patent relates to ways to organize the tables and cubes
14    used in databases so that they can be more easily and efficiently
> recognized and accessed. At a high level this organization is
15    accomplished by assigning a table or cube to a particular class.
> These classes serve to group data structures storing related data, so
16    an application can access the structures together.

17    D. Maier Rebuttal Rpt., (Swoopes Decl. Ex. A) ¶ 683.

18    As explained below, the "mapping" to classes at the heart of the '321 patent is simply a

practice of organizing information, a type of activity that courts have held to be abstract and
19
ineligible for patent protection.
20
**a.    Courts Have Found that Collecting, Organizing. and Presenting**
21    **Information Is an Abstract Idea**

22    Step one of the *Alice* test determines whether the claims' "character as a whole is directed

23    to excluded subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346

24    (Fed. Cir. 2015).  In other words, courts look at the "focus" or "basic thrust" of the claims.  *Elec.*

25    *Power Grp. LLC v. Alston S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  While "there is no 'single,

26    universal' definition of an abstract idea," courts look to Section 101 cases with similar factual

27    scenarios as "helpful guideposts."  *Voip-Pal.com, Inc. v. Apple*, *Inc.*, No. 12-CV-06216-LHK,

28    411 F. Supp. 3d 926, 951 (N.D. Cal. 2019), *aff'd*, 828 Fed. Appx. 717 (Fed. Cir. 2020) (quoting

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)).

For example, courts have found the following claims directed to various acts of collecting, organizing, and presenting data to be abstract ideas under *Alice* step one:

- Systems for manipulating XML documents by organizing data components into data objects and records and responding to modifications of the data, *Capital One*, 850 F.3d at 1340–41;

- Systems and methods for performing real-time monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results, *Elec. Power Grp.*, 830 F.3d at 1351; and

- Systems and methods for "organizing and accessing records through the creation of an index-searchable database," *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017).

As explained below, the claims of the '321 patent fall squarely within the realm of subject matter that courts have found is directed to abstract ideas.

### b. The Claims of the '321 Patent Involve Collecting, Organizing, and Presenting Information

Imagine that it is the middle of the twentieth century and someone purchases a business. The new owner discovers that the business has many boxes of preexisting records stored in a warehouse. These records might take various forms, including ledgers, purchase orders, and paystubs, among others. To get the records to employees who can actually make use of them, the owner hires a file clerk who inventories the records and organizes them into logical groups. There is one set of records for the accounting manager, another set of records for the procurement manager, and another set of records for the human resources manager. The file clerk creates a table that maps out which records are intended for each department manager, and the managers can use this table to find records that are relevant to them.

In 2003, SAP took the above concept of organizing information into logical groups and applied it to an electronic data warehouse to arrive at the '321 patent. Claim 1 recites taking preexisting data structures in the form of database tables and OLAP cubes and "mapping" them to

1 "at least one class" of tables or cubes, respectively. The Court's claim construction order defined

2 "mapping" as "creating and storing, in computer system memory or secondary storage for a

3 computer system, an association between data elements in the computer system such that a

4 computer can locate a data element using that association." ECF No. 279 at 22. Claim 1 does not

5 require any specific structure for associating database tables and cubes to classes; it merely recites

6 acts of "mapping."

7        Moreover, there is nothing specific in the claim language about the nature of these

8 "mappings" or these "classes." They are purely a function of a user's choice to develop a data

9 model that makes sense for a particular business application. For example, "there may be

10 database tables of the entity type 'accounts,' which contain the account numbers of customers and

11 vendors. Further, database tables of entity type 'organizational unit' may contain the legal entities

12 of a company or the organizational units of the company from a business structure perspective."

13 '321 patent, 1:65-2:3. "[A] class of database tables may contain database tables having a

14 common entity type." *Id.*, 2:6-7. For cubes, "there may be OLAP cube classes for performing

15 different kinds of transactional data processing, such as 'investment,' 'equity,' or 'goodwill'

16 transactional data processing." *Id.*, 2:20-23. The "mapping" of the '321 patent simply relates to

17 creating "mappings" that make sense to a particular user.

18        Courts have repeatedly held that the act of mapping or classifying data elements is an

19 abstract idea. For example, in *Capital One*, the Federal Circuit considered a claim that recited,

20 among other things "a component that maps the data components of each data object to one of the

21 plurality of primary record types." 850 F.3d at 1339. The Court held that "the patent claims are,

22 at their core, directed to the abstract idea of collecting, displaying, and manipulating data." *Id.* at

23 1340. One district court went so far as to conclude that "it would be difficult to conceive of a

24 more abstract concept than 'mapping' when that concept is not tied to any particular object or

25 method." *East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517, 2015 U.S.

26 Dist. LEXIS 5536, at *15, (D.N.H. Jan. 15, 2015), *aff'd*, 645 Fed. App'x 992 (Fed. Cir. 2016).

27 Like the claims at issue in *East Coast*, the claims of the '321 patent do not specify any particular

28 method for "mapping."

1   Similarly, in *TLI*, the Federal Circuit held that claims directed to "classifying and storing

2   digital images in an organized manner" were not eligible for patent protection.  *In re TLI*

3   *Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016).  Here, SAP's claims relate to

4   classifying data structures, that is, mapping the data structures to classes, in an organized manner.

5   *TLI* also provides a response to any argument by SAP that other claim elements, such as the

6   claimed tables, OLAP cubes, application programs, or mapping table make the claims concrete.

7   The *TLI* court found that while one challenged claim "requires concrete, tangible components

8   such as 'a telephone unit' and a 'server,' the specification makes clear that the recited physical

9   components merely provide a generic environment in which to carry out the abstract idea of

10  classifying and storing digital images in an organized manner."  *Id.* at 611.  Similarly, here, the

11  data warehouse elements described in the claims of the '321 patent simply provide a generic

12  environment in which to carry out the abstract idea of mapping data structures to classes.

13  Nor do the steps of filling an OLAP cube with data, processing the data, or providing

14  analysis to a user impart patentability.  *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1354 (holding that

15  claims directed to "gathering and analyzing information of a specified content, then displaying

16  the results" were directed to an abstract idea).  Filling an OLAP cube is simply a data gathering

17  step.  "Processing" data, without specifying an algorithm, is so abstract as to almost be

18  meaningless.  And "providing analysis" is the exact sort of step that the case law has found to be

19  an abstract idea.

20  ### c.    The '321 Patent Does Not Improve Computer Technology

21  The '321 patent does not provide "an improvement to computer functionality."  *Enfish,*

22  *LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335, 1339 (Fed. Cir. 2016) (upholding claims relating to

23  a new self-referential table, which was "a specific type of data structure designed to improve the

24  way a computer stores and retrieves data in memory").  Unlike the system at issue in *Enfish*, the

25  claims of the '321 patent do not define any new data structures.  Data warehouses, relational

26  database tables, and OLAP cubes were admittedly in the prior art.  *See, e.g.,* '321 patent, 1:13-14,

27  1:25-27 ("An OLAP cube is a multi-dimensional representation of a set of data. Such a cube is

28  the basis for transaction data storage in prior art data warehouse systems.").  The same holds true

for application programs.  *See id.*, 1:22-24 ("OLAP services typically provide analytical tools to rank, aggregate, and calculate lead and lag indicators for the data under analysis.")

Even if the purported invention does help users retrieve data, that alone is not a patentable, technological improvement.  As this Court recently explained, "[t]he mere fact that an idea or process solves a problem or proves useful in a particular industry does not make it patent eligible."  *Synopsys, Inc. v. Avatar Integrated Sys.*, No. 20-cv-04151-WHO, 2020 U.S. Dist. LEXIS 212877, at *19 (N.D. Cal. Nov. 12, 2020) (citing *SAP Am., Inc. v. InvestPic*, *LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018)).

The creation of "mappings," via mapping tables or some other mechanism, does not save SAP's claims.  SAP may assert that the claimed "mapping" creates an assignment of tables or cubes to classes and allows a computer to retrieve tables or OLAP cubes assigned to a given class to perform actions related to that class.  But to the extent that the claims derive their value from a stored "mapping," the specification makes clear that this value comes from a human's choice to associate particular tables or cubes with classes, not from a new data structure or technological improvement.  *See, e.g.*, '321 patent, 2:17-23 ("The user may need to classify a selected OLAP cube in order to assign the selected OLAP cube to predefined OLAP cube classes."); 2:31-35 ("[T]he user may be required to enter the name of a database table in a mapping table in order to assign the database table to one of the predefined entity type classes supported by the selected application.").  Numerous additional references demonstrate that the recited "mappings" in the '321 patent refer to associations chosen by humans.  *See* '321 patent, 2:40-44; 3:61-64; 4:8-19; 5:27-30; 5:35-44; 6:11-16.

The "mapping table" of claim 4 does not confer patent eligibility.  Although the Court construed a "mapping table" as "a computer-implemented data structure that holds associations or assignments," ECF No. 279 at 22, there is nothing in the claim language or specification that would materially distinguish a computerized mapping table from one that could be created with a pen and paper.  And courts have consistently found such claim elements unpatentable.  *See, e.g.*, *Symantec Corp.*, 838 F.3d at 1318 (finding patent directed to screening emails for unwanted content invalid because "with the exception of generic computer-implemented steps, there is

nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper").  Indeed, SAP took a broad view of the "mapping table" limitation for infringement purposes.  SAP's expert opined that "[a] folder or directory structure stored on a computer system groups objects and allows them to be located.  Such a structure can be considered a mapping table."  Appx. 3 to Expert Rpt. of D. Maier In Support of SAP SE's Patent Infringement Claims (Swoopes Decl. Ex. B) at 32.  In other words, according to SAP's expert, a folder containing logically related data items is a "mapping table."  And computer "folders" originated as a metaphor for paper folders.

Unlike in *Enfish*, the claims of the '321 patent are not focused on how the "mapping" or "mapping table" alters the database in a way that leads to an improvement in computer functionality.  SAP does not assert that the '321 patent makes queries run faster or reduces memory usage.  Instead, the '321 patent claims a basic business practice of organizing data to make it "more user friendly."  '321 patent, 5:63-65.  But "simply adding conventional computer components to well-known business practices" does not render a claim patent eligible.  *Enfish*, 822 F.3d at 1338.  In fact, "conventional business practices are often found to be abstract ideas, even if performed on a computer."  *Smart Authentication IP LLC v. Elec. Arts, Inc.*, 402 F. Supp. 3d 842, 850 (N.D. Cal. 2019) (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2016)).  Thus, the focus of the claims remains collecting and organizing information, which the Federal Circuit has repeatedly found to be abstract.

### 4.    The '321 Patent Lacks an Inventive Concept

The '321 patent fails the second step of the *Alice* test because its claims do not contain an "'inventive concept,' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221.  To be patentable, a claim must include "additional features to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]."  *Id.* (citations and internal quotation marks omitted).  Adding a computer limitation into the claims does not alter the step two analysis.  *Id.* at 222.  Instead, "the relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer."  *Id.* at 225.  As in *Alice*, the relevant answer for the claims of the

1    '321 patent is "no."

2           Each claim of the '321 patent recites well-known, routine, conventional database elements

3    including tables, OLAP cubes, and application programs and uses these elements to perform well-

4    understood, routine, and conventional functions of collecting, organizing, processing, or

5    analyzing data.  Regardless of whether these elements are considered individually or in

6    combination, they do not provide an inventive concept.

7                        a.       The Claims Recite Well-Understood, Routine, Conventional
                                  Database Features
8
9           SAP cannot dispute that relational database tables were conventional, known structures.

10   A person of ordinary skill in the art would understand that database tables were ubiquitous in data

11   warehouse systems, and the patent acknowledges that "Online analytical processing (OLAP) is a

12   key part of most data warehouse and business analysis systems."  '321 patent, 1:13-14.

13   Moreover, during claim construction, SAP admitted that transactional data is "typically" stored in

14   tables: "Transactional data, such as records for particular sales, is typically entered or stored in a

15   relational database in rows in a two-dimensional table."  SAP's Opening Claim Construction

16   Brief, ECF No. 211 at 8 (citing testimony from SAP's technical expert, ECF No. 211-1 ¶ 46).[1]

17          The '321 patent's specification specifically admits that OLAP cubes were well known in

18   the prior art: "An OLAP cube is a multi-dimensional representation of a set of data. Such a cube

19   is the basis for transaction data storage in prior art data warehouse systems."  '321 patent, 1:25-

20   27.

21          Citing the specification of the '321 patent, SAP also specifically admitted that

22   "[a]pplication programs were well known to the POSITA at the time the '321 patent was filed."

23   SAP's Opening Claim Construction Brief, ECF No. 211 at 20 (citing '321 patent, 1:49-51, 3:45-

24   51).  To the extent SAP attempts to argue that the "set" of application programs recited in claim 2

25   provides an inventive concept, SAP's claim construction arguments took the contrary position by

26   citing multiple examples of prior art application programs, including the SAP business

27   _____

28   [1] Although this argument was made in the context of the '421 patent, it also holds true for the
     '321 patent.

information warehouse and Microsoft Excel.  *Id.* at 21-21.  Moreover, SAP argued that these

application programs could provide an "OLAP component" to fill OLAP cubes with data.  *See id.*

### b.   The Remaining, Functional Claim Limitations Are In The Realm Of Abstract Ideas

The remaining claim limitations, including mapping, filling cubes with data, processing

data, and providing analysis are abstract, as explained above, and thus cannot provide an

inventive concept.  The Federal Circuit has held that "[i]f a claim's only 'inventive concept' is the

application of an abstract idea using conventional and well-understood techniques, the claim has

not been transformed into a patent-eligible application of an abstract idea."  *BSG Tech LLC v*

*Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018).  Because the limitations of mapping,

filling cubes with data, processing data, and providing analysis apply abstract ideas, the court

need not consider "whether [they are] well-understood, routine, and conventional."  *BSG Tech*,

899 F.3d at 1290.  *Electric Power Group* is analogous.  There, at step two, the court explained

that "merely selecting information, by content or source, for collection, analysis, and display does

nothing significant to differentiate a process from ordinary mental processes, whose implicit

exclusion from § 101 undergirds the information-based category of abstract ideas."  *Elec. Power*

*Grp.*, 830 F.3d at 1355.

Here, the steps of mapping tables and cubes to classes, collecting data into OLAP cubes,

and processing and analyzing the data simply reflect abstract mental processes.  The claims do

not recite any specific algorithms for performing these steps.  They simply claim a result.

In any event, all of these steps are also well-understood, routine, and conventional.  It has

been conventional since before the application date of the '321 patent to classify or assign tables

or cubes to logical groupings or classes, each associated with applications for processing.  For

example, the figure below from a prior art patent application shows a grouping of tables related to

sales, with a central sales "fact" table surrounded by tables that support the measurement of sales,

including Time, Product, and Region tables.



FIG. 3

U.S. Patent Application Publication No. US 2004/0139061 (filed Jan. 3, 2003) (Swoopes Decl. Ex. C), FIG. 3.  The figure below from U.S. Patent No. 6,385,604 provides an example of another grouping of tables related to Supplied Parts, including Supplier, Time Period, Part, and Supplied Parts tables:



U.S. Patent No. 6,385,604 (issued May 7, 2002) (Swoopes Decl. Ex. D) FIG. 4A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Similarly, the figure below shows an OLAP cube labeled "Finance Cube" next to its associated "Finance Cube Model," which represents a class of cubes related to finance.



Figure 1    Application scenario

N. Colossi et al., "Relational extensions for OLAP," IBM Systems Journal., 41(4):714–731 (2002) (Swoopes Decl. Ex. E), FIG. 1. The "Finance Cube" and the other examples of cubes depicted in the figure above are the same sorts of cubes described in the '321 patent: "For example, class I may contain OLAP cubes which are used for financial transactional data storage and processing, whereas OLAP cube class II may contain OLAP cubes which are used for real estate type transactional data storage and processing." '321 patent, 5:15-20; *see id.*, 5:12-15. The figure from the Colossi article above also shows various application programs that can be used with different tables and cubes, including customer data mobile clients, market share web clients, and market analysis application clients.

As for "invoking an [OLAP] component to fill [OLAP] cubes with transactional data," in attempting to overcome arguments that the limitation of claim 4 reciting this phrase is indefinite,

1   SAP's expert argued that software to carry out this function was well known.  He asserted: "Some

2   examples of such applications, familiar to a skilled artisan when this patent application was filed,

3   include various BI Tools such as Microsoft Excel, BusinessObjects and Tableau."  D. Maier

4   Rebuttal Rpt. (Swoopes Decl. Ex. A) ¶ 701; *see id.* ¶ 704.

5         Dr. Maier also argued that application programs for "processing the entities stored in the

6   sub-set of database tables and the transactional data stored in the sub-set of [OLAP] cubes" were

7   well known.  He asserted: "Some examples of such components and applications, familiar to a

8   skilled artisan when this patent application was filed, include various BI Tools such as Microsoft

9   Excel, BusinessObjects and Tableau." *Id.* ¶ 712; *see id.* ¶ 715.

10        Finally, to overcome yet another indefiniteness argument, SAP's expert argued that

11   software to carry out "providing analysis . . . to a user" was well known.  He argued: "Some

12   examples of such structures, familiar to a skilled artisan when this patent application was filed,

13   include various BI Tools such as Microsoft Excel, BusinessObjects and Tableau." *Id.* ¶ 719.

14        Because each claim element of the '321 patent, taken individually or as a combination,

15   recites well-known, routine, conventional database elements and/or recites the application of an

16   abstract idea, there can be no dispute that the '321 patent fails to claim an inventive concept.

17                                                  * * *

18        Because the '321 patent is directed to an abstract idea and contains no inventive concept,

19   the Court should grant summary judgment and dismiss SAP's counterclaim alleging that Teradata

20   infringes the '321 patent.

21   **B.    SAP Cannot Recover Damages for the '179 and '421 Patents Before
            May 21, 2019**

22        SAP improperly seeks reasonable royalties for the '179 and '421 patents for periods

23   before May 21, 2019, which is the date SAP gave Teradata notice of its infringement claims.

24   Undisputed facts show that SAP's request is contrary to law.  The question of SAP's legal ability

25   to recover damages before notice can be resolved under Rule 56, and SAP bears the burden of

26   proof to show it marked or gave notice. *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-

27   04738-WHO, 2020 U.S. Dist. LEXIS 158184, at *21-24 (N.D. Cal. Aug. 31, 2020).

28

SAP's disclosures and discovery responses establish all of the following facts:

First, SAP sold before the notice date and currently sells at least one product that practices the alleged invention of the '179 patent – a product previously known as Sybase Adaptive Server R. Anywhere (currently referred to as SAP SQL Anywhere).  *See* Counterclaim-Plaintiff SAP SE's Disclosures Pursuant to Patent L.R. 3-1 and 3-2 (Aug. 19, 2019) ("SAP Infringement Contentions"), ECF No. 406-2 at 6; SQL Anywhere sales data, SAP_27152350 (Swoopes Decl. Ex. F).

Second, SAP sold before the notice date and currently sells at least the following products that practice the alleged invention of the '421 patent: SAP Business Warehouse and SAP Business ByDesign.[2]  *See* SAP Infringement Contentions, ECF No. 406-2 at 6; SAP BW sales data, SAP_27152345 (Swoopes Decl. Ex. G); SAP Business ByDesign sales data, SAP_27152346 (Swoopes Decl. Ex. H).

Third, SAP did not mark its products with the '179 or the '421 patent numbers.  *See* Defendants' Responses and Objections to Teradata's First Set of Requests for Admission (Nos. 1-118) (May 14, 2020) (Swoopes Decl. Ex. I) at 36-37, Responses Nos. 56 and 58; SAP Infringement Contentions, ECF No. 406-2 at 9; SAP SE's Supplement to Patent L.R. 3-8 Damages Contentions, ECF No. 405-7[3] at 16-18.

And fourth, SAP first gave Teradata actual notice of the alleged infringement of the '179 and '421 patents on May 21, 2019.  *See* Defendants' Responses and Objections to Teradata's First Set of Requests for Admission (Nos. 1-118) (May 14, 2020) (Swoopes Decl. Ex. I) at 38-40, Responses Nos. 61 and 63; SAP SE's Supplement to Patent L.R. 3-8 Damages Contentions, ECF No. 405-7 at 16-18.

Under 35 U.S.C. § 287, a patent holder who makes a product that uses a patented invention may mark the product with the patent number.  "In the event of failure so to mark, no

---

[2] There is a dispute over whether SAP properly disclosed (or even used) the alleged invention of the '421 patent in HANA.  That debate is of no significance to this motion because SAP had already disclosed its use of the alleged invention in the two products identified above.

[3] The Court's May 5, 2021 Order directed the Clerk to unseal the document at ECF No. 405-7, but as of the drafting of this Motion, it remained under seal.  ECF No. 418 at 3.

1   damages shall be recovered by the patentee in any action for infringement, except on proof that

2   the infringer was notified of the infringement and continued to infringe thereafter, in which event

3   damages may be recovered only for infringement occurring after such notice." *Id.*; *see also*

4   *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 U.S. Dist. LEXIS 46106,

5   at *50 (N.D. Cal. Apr. 8, 2015) ("The law is clear that, absent marking, damages may not be

6   recovered for infringement occurring before the infringer was notified of the infringement.")

7   Actual notice requires the affirmative communication of a specific charge of infringement by a

8   specific accused product or device. *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 950 F.3d 860,

9   864 (Fed. Cir.), *cert. dismissed*, 141 S. Ct. 753 (2020). Here that did not occur before May 21,

10  2019.

11          The limitation on damages applies to method claims where, as here, a patent holder asserts

12  both method and apparatus claims from the same patent in its lawsuit. *ActiveVideo Networks,*

13  *Inc. v. Verizon Communs., Inc.,* 694 F.3d 1312, 1334 (Fed. Cir. 2012) ("if a single patent contains

14  both apparatus claims and method claims, the marking requirement applies to all the claims"); *see*

15  *also Am. Med. Sys., Inc. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1538-39 (Fed. Cir. 1993) (same);

16  *Unwired Planet, LLC v. Apple Inc.*, No. 13-cv-04134-VC, 2017 U.S. Dist. LEXIS 20935, at *13-

17  14 (N.D. Cal. Feb. 14, 2017) ("the rule reaffirmed [by the Federal Circuit] turns on the claims

18  asserted, not the claims still active at or after summary judgment."). The '179 and '421 patents

19  contain both apparatus and method claims, and SAP has asserted both in this case. (*See* ECF

20  Nos. 123, 124, 124-3, 363.)

21          In light of the undisputed facts, SAP cannot recover damages for any infringement of

22  either the '179 or '421 patent before May 21, 2019. The Court should issue an order confirming

23  the same.

24  **IV.    CONCLUSION**

25          For the foregoing reasons, the Court should grant Teradata's motion for summary

26  judgment. Teradata requests that the Court declare the asserted claims of the '321 patent invalid

27  under 35 U.S.C. § 101 and rule that SAP cannot recover damages for any infringement of either

28  the '179 or '421 patent before May 21, 2019.

1    Dated:  August 25, 2021                    MORRISON & FOERSTER LLP

2
                                                    /s/   Mark L. Whitaker
3                                               Mark L. Whitaker

4                                               Attorneys for Plaintiffs and
                                                Counterclaim-Defendants
5                                               TERADATA CORPORATION,
                                                TERADATA US, INC., and TERADATA
6                                               OPERATIONS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28